**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HOLLYWOOD COLLECTIBLES**
**GROUP, LLC,**

       **Plaintiff,**

**v.**                                                     **Case No:  6:14-cv-176-Orl-31KRS**

**MASTER CUTLERY, INC.,**

       **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss or Transfer Venue (Doc. 8) filed by the Defendant, Master Cutlery, Inc. ("Master Cutlery"), and the response in opposition (Doc. 16) filed by the Plaintiff, Hollywood Collectibles, LLC ("Hollywood Collectibles").

### I. Background

"Rambo" is a federally registered trademark – registration number 1400935 -- for use with goods and services, primarily knives. According to the allegations of the Complaint (Doc. 1), the owner of the "Rambo" mark granted Hollywood Collectibles, a Florida company, a license to manufacture and sell replicas of knives featured in the first three "Rambo" movies. Hollywood Collectibles then granted a sublicense to Master Cutlery to do the same. Subsequently, a fourth "Rambo" movie was released. Hollywood Collectibles obtained a license to manufacture and sell replica knives from the fourth movie and granted a corresponding sublicense to Master Cutlery.

Both sublicense agreements expired in December 2010. The parties attempted to renegotiate and, it appears, continued to perform under the terms of the old agreements during the

negotiations. However, in April 2012 Hollywood Collectibles formally terminated the sublicense agreements.

Hollywood Collectibles contends that, despite the termination of the sublicense agreements, Master Cutlery continues to manufacture and sell replica Rambo knives. Hollywood Collectibles also contends that, prior to the termination, Master Cutlery improperly deducted certain expenses from the royalty payments it was remitting under the sublicensing agreement. In the instant suit, filed February 3, 2014, Hollywood Collectibles asserts: a claim for breach of contract (Count I); a Lanham Act claim for false designation of origin (Count II); a Lanham Act claim for infringement (Count III); an unjust enrichment claim (Count IV); a claim for trespass to chattels (Count V); and an unfair competition claim (Count VI).

By way of the instant motion, Master Cutlery seeks dismissal or transfer on numerous grounds, including lack of standing, lack of personal jurisdiction, and improper venue.

**II.    Legal Standards**

A.  Motions to Dismiss

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir.1994), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); see also *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir.2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir.2003) (citing FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir.2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id*. at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Igbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950–1951 (2009).

B.  Personal Jurisdiction

A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the Complaint sufficient facts to make out a prima facie case of jurisdiction. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir.1999); see also *Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir.1986) (describing procedure for plaintiff to establish personal jurisdiction under Florida's long-arm statute). Where a defendant challenges jurisdiction by submitting affidavits in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."

To exercise personal jurisdiction over a defendant, the Court must determine whether the exercise of jurisdiction is: (1) specific or general; (2) appropriate under the state's long-arm statute; and (3) comports with the Due Process Clause of the Fourteenth Amendment to the United

States Constitution. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *Stubbs v. Wyndham Nassau Resorts & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir.2006); *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A* ., 421 F.3d 1162, 1166 (11th Cir.2005); see also *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla.1989).

Specific jurisdiction is founded on a defendant's activities in the forum that are related to or arise out of the cause of action alleged in the complaint. *Stubbs*, 447 F.3d at 1360 n. 3 (citing *Consol. Dev. Corp. v. Sherritt, Inc*., 216 F.3d 1286, 1292 (11th Cir.2000)). If a defendant is subject to specific jurisdiction on one claim but not another, the Court may, in certain circumstances, exercise personal jurisdiction over the defendant as to both claims. 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1069.7 (3d ed. Supp. 2009) . General jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated. *Stubbs*, 447 F.3d at 1360 n. 3 (citing *Meier*, 288 F.3d at 1269). If the defendant is subject to the general jurisdiction of the court, it must respond in that court to any claim in the complaint. *Id*.

The exercise of specific jurisdiction comports with due process if the defendant has certain "minimum contacts" with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation and citation omitted); *see also, e.g., Fraser v. Smith*, 594 F.3d 842, 845 (11th Cir.2010). In assessing these contacts, the Court must determine whether the defendant purposefully availed itself of the privilege of conducting activities in Florida — or purposefully established contacts in Florida — and whether there is a sufficient nexus between those contacts and the litigation. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc*., 593 F.3d 1249, 1267 (11th Cir.2010).

The exercise of general jurisdiction is more exacting and will comport with due process only if the defendant's contacts with the forum are "continuous and systematic." *Helicopteros*

*Nacionales de Colombia, S.A.*, 466 U.S. at 414; *Sherritt*, Inc., 216 F.3d at 1292; see also *Seabra v. Int'l Specialty Imports*, 869 So.2d 732, 734 (Fla. 4th DCA 2004). In Florida, a defendant's contacts are "continuous and systematic" if the defendant has "engaged in substantial and not isolated activity" within the state. *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1275 n. 16 (11th Cir.2009) (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So.2d 617, 620 (Fla. 4th DCA 1999)).

No exercise of jurisdiction, be it specific or general, may offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (quotation and citation omitted). Accordingly, the Court must determine whether the forum's interest in the dispute and the plaintiff's interest in obtaining relief are outweighed by the burden on the defendant of having to defend itself in a Florida court and the interests of the interstate judicial system. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir.2008).

**III.   Analysis**

A. Standing

Master Cutlery argues that Hollywood Collectibles lacks standing to bring its trademark infringement claim.[1] The Lanham Act's cause of action for infringement of a registered trademark, 15 U.S.C. § 1114(1), is available only to a "registrant" of the trademark at issue, a term the Act defines as extending to the actual registrant's "legal representatives, predecessors, successors and assigns." 15 U.S.C. § 1127. Under some circumstances, an exclusive licensee has standing to pursue a trademark infringement action. *See, e.g.*, *Drew Estate Holding Co., LLC*

---

[1] Actually, the pertinent portion of Master Cutlery's brief is titled "Plaintiff has no Standing to Bring This Action." (Doc. 8 at 13). However, Master Cutlery only addresses the Plaintiff's standing to bring a trademark infringement claim, as opposed to the Plaintiff's claims for breach of contract, unjust enrichment, and so on. Accordingly, this order only examines the Plaintiff's standing to bring the infringement claim.

*v. Fantasia Distribution, Inc.*, 875 F.Supp.2d 1360, 1366 (S.D.Fla. 2012) (citing cases). However, in both of the licenses obtained by Hollywood Collectibles, the licensor retained the right to manufacture and sell Rambo knives for promotional and other purposes.[2]  As a non-exclusive licensee, Hollywood Collectibles lacks standing to pursue a trademark infringement claim.   Count II will be dismissed with prejudice.

---

[2] In the initial license, which was attached to the Complaint, the licensor (StudioCanal Image S.A.) reserved the right

> to manufacture, distribute, offer for sale, sell, advertise, promote, display and otherwise exploit articles similar and/or identical to the Licensed Articles for use in connection with premium sales or give-aways, promotional give-aways, in-theater sales, mail/telephone order sales, home television sales (e.g. home shopping club), radio sales, computer shopping services, and/or sales by or through fan clubs, and/or in connection with facilities owned, operated and/or controlled by Licensor, its parent, affiliated and/or subsidiary companies.

(Doc. 1-1 at 5).   In the second license, which covered the replica knives from the fourth "Rambo" movie, the licensors (Nu Image, Inc. and LionsGate, Inc.) also retained certain rights:

> [N]o license is granted hereunder for the manufacture, distribution or sale of the Licensed Product(s) for publicity purposes, for sale or gift in combination with other products or services, as giveaways, as premiums used for the purpose of publicizing, promoting or increasing sales of any other product(s) or service(s), or in connection with any similar method of merchandising.

(Doc. 1-1 at 15).

B. Personal Jurisdiction

Master Cutlery contends (1) that it is not subject to personal jurisdiction in this state under Florida's long-arm statute, Fla. Stat. § 48.193, and (2) that a lack of minimum contacts with Florida precludes any exercise of jurisdiction by the Florida courts.   As to the long-arm statute, Master Cutlery argues that it is not subject to personal jurisdiction under Fla. Stat. §48.193(1)(a)(2) for "committing a tortious act within this state" because trademark infringement occurs where the passing-off occurs, and less than one-tenth of one percent of its sales since 2012 consisted of Rambo knives sold to customers in Florida.   (Doc. 8 at 5).   As the Court has already determined that Hollywood Collectibles lacks standing to pursue a trademark infringement claim, this point is moot.

On the other hand, Florida's long-arm statute is not limited to torts.   Section 48.193(1)(a)(7) provides for long-arm jurisdiction over anyone who "breach[es] a contract by failing to perform acts required by the contract to be performed within this state."   Hollywood Collectibles has alleged (and Master Cutlery does not dispute) that the Defendant approached the Plaintiff, a Florida resident, at a Florida trade show, seeking to sublicense the Plaintiff's right to manufacture and sell replica Rambo knives, and that the Defendant subsequently entered into a multi-year sublicensing agreement under which the Defendant was required, *inter alia*, to send royalty payments to the Plaintiff in Florida.

Hollywood Collectibles alleges that Master Cutlery did not make all of the payments required to be made under the sublicenses.   Under the terms of the sublicenses, those payments were due in Florida, and this allegation is sufficient, at this stage, to satisfy Section 48.193(1)(a)(7).   The foregoing also demonstrates that the Defendant purposefully availed itself of the privilege of doing business in Florida, such that it should reasonably anticipate being haled

into court here, and an exercise of personal jurisdiction over the Defendant in this Court will not violate the Due Process Clause. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (concluding that Michigan defendant established sufficient minimum contacts to support exercise of jurisdiction by Florida court where, even though never physically entering state, defendant reached out to Florida resident and entered into long-term franchise contract requiring continuing oversight by, and payment to, Florida resident).

   C.  Forum Selection

Master Cutlery contends that the agreements between the parties contain a mandatory forum-selection clause and should be transferred to California. The clause at issue[3] from the first sublicensing agreement between Master Cutlery and Hollywood Collectibles reads as follows:

> **GOVERNING LAW**: This Agreement shall be construed and interpreted pursuant to the laws of the State of California, Los Angeles County and the federal laws of the United States (including, without limitation, the Uniform Commercial Code) and the parties hereto submit and consent to the jurisdiction of the courts of the State of California, including Federal Courts located therein, should Federal jurisdiction requirements exist, in any action brought to enforce (or otherwise relating to) this contract.

(Doc. 8-3 at 11). Contrary to Master Cutlery's assessment, this is clearly a permissive clause, not mandatory; although the parties agreed to allow themselves to be sued in California, they did not limit themselves to only suing or being sued there. The clause does not provide grounds for requiring a transfer of this case to California.

In the alternative, Master Cutlery argues that the Court should transfer the case to California "for the convenience of parties and witnesses" pursuant to 28 U.S.C. § 1404(a). However, Master Cutlery has made no showing that trial in California would be markedly more

---

[3] Master Cutlery also points to a second clause on the same page, but that clause only deals with mediation.

convenient than trial here. For example, Master Cutlery argues that employees and representatives of "California-based movie studios" would prefer to be in California, but fails to identify any such employees or representatives or explain how they might shed light on any issue that has actually been raised in this case. The request to transfer venue will be denied.

**IV      Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss or Transfer Venue (Doc. 8) is **GRANTED IN PART AND DENIED IN PART**. Count III is **DISMISSED WITH PREJUDICE** for lack of standing. In all other respects, the motion is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 22, 2014.

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party